UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| BRANDON CALLIER,<br><br>        Plaintiff,<br><br>v.<br><br>MORALITY INC, a Florida corporation, JOSHUA CACHO, VERITAS LEGAL PLAN, INC. a Florida corporation, ANGELO ANZALONE, AB SOLUTION PROCESSING, LLC d/b/a GUARDIAN LEGAL PROCESSING MARTHA RODRIGUEZ, LIFECARE, INC a Delaware Corporation, CONSOLIDATION CAPITAL, LLC an unknown limited liability company and JOHN DOES 1-4<br>        Defendants. | EP21CV0207 |

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1. Plaintiff BRANDON CALLIER ("Plaintiff" brings this Complaint and Demand for Jury Trial against Defendant MORALITY INC, Defendant JOSHUA CACHO, Defendant VERITAS LEGAL PLAN, INC., Defendant ANGELO ANZALONE, Defendant AB SOLUTION PROCESSING, LLC d/b/a GUARDIAN LEGAL PROCESSING, Defendant MARTHA RODRIGUEZ, Defendant LIFECARE INC, Defendant CONSOLIDATION CAPITAL, LLC and Defendant JOHN DOES 1-4 (together "Defendants") to stop calling Plaintiff's cellular telephone and to obtain redress as authorized by statute.

1

## NATURE OF ACTION

2. Defendants offer debt relief services. As part of marketing their products and services, Defendants and their agents placed calls to Plaintiff's cell phone that used an auto dialing system and prerecorded voice messages.

3. Defendants make unsolicited and unauthorized calls to consumers using auto dialing systems to solicit credit card debt relief and credit restoration.

4. Defendants did not obtain consent from Plaintiff prior to calling his cell phone, and Defendants are therefore liable under the Telephone Consumer Protection Act 47 U.S.C. § 227 (the "TCPA") and its implementing regulation, 47 C.F.R. § 64.1200(a)(2).

5. Congress enacted the TCPA in 1991 to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

6. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

7. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

8. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to

2

the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

9. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

10. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

11. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

12. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

13. The TCPA targets unauthorized calls exactly like the ones alleged in this case, based on Defendant's use of technological equipment to spam consumers on a grand scale without their consent.

14. By placing the calls at issue, Defendants have violated the privacy of Plaintiff and caused him to suffer damages that are recognized by statute.

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

3

15. Plaintiff therefore seeks an injunction requiring Defendants to stop calling his cell phone, as well as an award of actual and statutory damages, civil penalties, costs and reasonable attorneys' fees.

## PARTIES

16. Plaintiff BRANDON CALLIER is a natural person and is a citizen of the Western District of Texas and was present in the Western District of Texas during all calls at issue in this case.

17. Defendant MORALITY INC ("Morality") is a corporation organized and existing under the laws of Florida and can be served via registered agent Joshua Cacho, 255 Primera Boulevard, STE 160, Lake Mary, Florida 32746.

18. Defendant JOSHUA CACHO ("Cacho") is a natural person and Officer of Morality, Inc and can be served at 255 Primera Boulevard, STE 160, Lake Mary, Florida 32746.

19. Defendant VERITAS LEGAL PLAN, INC ("Veritas") is a corporation organized and existing under the laws of Florida and can be served via registered agent Michael J. McGoey, CPA, Inc., 2700 N Military Trail, STE 200, Boca Raton, Florida 33431.

20. Defendant ANGELO ANZALONE ("Anzalone") is a natural person and Director, Chief Executive Officer, and Secretary of Veritas Legal Plan, Inc. and can be served at 639 E. Ocean Ave, STE 205, Boynton Beach, Florida 33435.

21. Defendant AB SOLUTIONS PROCESSING, LLC d/b/a GUARDIAN LEGAL PROCESSING ("Guardian") is a limited liability company organized and existing under the laws of Florida and can be served via registered agent Elizabeth Singley, 4846 Cardinal Boulevard, Jacksonville, Florida 32210.

22. Defendant MARTHA RODRIGUEZ is a natural person, officer of AB SOLUTION PROCESSING, LLC and can be served at 4846 Cardinal Boulevard, Suite C, Jacksonville, Florida 32210.

23. Defendant LIFECARE, INC. is a corporation organized and existing under the laws of Delaware and can be served via registered agent CT Corporation System, 1999 Bryan Street, STE 900, Dallas, Texas 75201.

24. Defendant CONSOLIDATION CAPITAL, LLC is an unknown limited liability company whose nature will be revealed during discovery.

## JURISDICTION AND VENUE

25. This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as this case arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal stature.

26. This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim arises from the same nucleus of operative fact, i.e., Defendants' telemarketing robocalls to Plaintiff; adds little complexity to the case; and doesn't seek money damages, so it is unlikely to predominate over the TCPA claims.

27. This Court has personal jurisdiction over Defendants because they conduct business in this District, purposefully directed calls into the State of Texas and because the events giving rise to this lawsuit occurred in this District. The natural person Defendants in this case personally participated in the fraud schemes by authorizing the fraud attempts, personally benefiting from the fraud, and approving the contracts and payments to the telemarketers.

28. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendants regularly conducts business in the state of Texas and in this District, and because the wrongful conduct giving rise to this case occurred in this District.

## FACTUAL ALLEGATIONS

29. Plaintiff has been on the Do Not Call Registry since December 2007.

30. On July 2, 2021, Plaintiff received the first of a series of robocalls with prerecorded voice messages. When Plaintiff answered the phone a message from an artificial voice began playing. The message stated:

> "Hello, this is Kate form Discover. According to your recent and previous excellent payment history, under the FCRA, you are qualified to get reduction on your credit card account. You must act to get the reduction. Press one to speak to a live representative."

31. Plaintiff does not have a Discover credit card and could not possibly have been receiving a call from Discover about his payment history and credit card interest rate. Therefore, Plaintiff pressed one in order to determine who was robocalling him with prerecorded voice messages.

32. When Plaintiff pressed "one" a representative came on the line and said "Card Services, how are you doing today? I believe you are responding to get lower rate on your existing credit card right." The representative was pretending to be part of a legitimate credit card member services in an attempt to coax Plaintiff into falling for their fraud attempt.

33. These fraud attempts and phone calls continued for the next two months.

34. Defendants conspire as part of an organized cabal existing to perpetrate fraud on a mass scale and trick consumers into ruining their credit for promises of becoming debt free while having their personal credit "restored" and back to having "excellent credit" within a year.

35. Defendants without legal authority attempt to open credit cards in the name of their victims with the goal of obtaining large cash advances without the knowledge and consent of their victims.

36. Defendant Veritas and Defendant Anzalone benefit from the conspiracy by providing legal services via contracted attorneys for fees paid by the victims of their fraud. This is indicated in the contract provided to Plaintiff on August 27, 2021. The contract states:

> "Member is purchasing a contractual obligation contract for which Veritas Legal Plan agrees to provide benefit for all attorney fees to the representation of the Member with consumer protection advice and counsel and in the defense of future debt collection related matters or lawsuits for non-payment of debts."

37. Defendant Consolidation Capital, LLC benefits from the conspiracy by providing credit repair through their "Fresh Start Plus Credit Builder." Defendants destroy their customers' credit and then charge them to repair the credit.

38. Defendant LifeCare benefits from the conspiracy by automatically enrolling the consumer in a discount saving platform known as Veritas Values. Defendant LifeCare generates revenue through this program to the benefit and profitability of the company.

39. Defendant AB Solution and Defendant Rodriguez benefit from the conspiracy by performing services for fees obtained from consumers like Plaintiff.

40. Defendant Morality and Defendant Cacho benefit from the conspiracy by obtaining fees by convincing consumers like Plaintiff to destroy their credit and then referring them to Defendants AB Solution, LifeCare, Consolidation Capital, and Veritas Legal.

41. Plaintiff pretended to be interested in the debt elimination services of the Defendants in order to determine the source of the persistent and annoying illegal robocalls.

42. On or about August 27, 2021, Defendants sent a notary to Plaintiff in order to deliver a contract to retain the Defendants services. Plaintiff signed the contract as it was the only way to know the source of the robocalls.

43. Plaintiff received more than 40 phone calls from the Defendants and not on a single call was it revealed the calls were on behalf of LifeCare, Inc., Consolidation Capital LLC, Veritas Legal Inc., or AB Solution Processing, LLC.

44. On or about August 25, 2021, Defendant Morality contacted Synchrony Bank which issues the Sam's Club Mastercard and attempted to obtain a cash advance check from Plaintiff's Sam's Club Mastercard. This was done without Plaintiff's knowledge or consent. The cash advance did not occur because Sam's Club Mastercard does not allow this process.

45. Synchrony Bank closed Plaintiff's account as a result of this fraud attempt.

46. On or about August 25, 2021, Defendant Morality then applied for a Bank of America credit card using Plaintiff's social security number, birthdate, and other stolen information. Plaintiff did not give this authorization and no idea this was happening until September 1, 2021. Plaintiff was the victim of identity theft.

47. On September 1, 2021, Defendant Morality called Plaintiff on the phone and informed Plaintiff of the attempted cash advance on his Sam's Club credit card and the attempted account opening with Bank of America. Defendant was attempting to get Plaintiff to allow them some other way of collecting the thousands of dollars they wanted to charge Plaintiff for destroying his credit. Plaintiff had the following conversation with Morality, Inc Employee Darren Wilson:

> Wilson: "Yes, good afternoon. Mr. Callier? Yes, this is Darren Wilson giving a call back with Morality, Inc. How are you doing today sir?"
>
> Callier: "Hey, the phone may, or may not cut off, I am about to go through a spot where my phone cuts off sometimes. So it's not me hanging up. But go ahead."
>
> Wilson: "Hey, yes, I am not sure if you remember speaking to me Mr. Callier, but last time we spoke, you know, we explained the program. I was able to get you over to the case manager...I'm not sure if it was um, it actually, um who it was, maybe John Goldberg. I'm not sure but."
>
> Callier: "I remember John Goldberg."
>
> Wilson: "I sent the notary out to the house and all of the documents have been signed. Correct?
>
> Callier: "Yes"
>
> Wilson: "OK. Perfect. Not sure if you recall. Yes, sir, all right. I don't know if you recall but we had a one-time enrollment fee that was $3500 that would cover the cost of the program and the rate reduction, and I told you that once you actually went through the process of getting and finalized into the program that's when we would apply our one-time fee to the Sam's Club Mastercard. All right, however, being that Sam's Club....ok we have one of two ways of receiving our enrollment fee. Ok, one we'll have a balance transfer check sent from your credit card company to our company account and payment address – which Sam's Club, they do not offer that type of transaction. Another way that

8

we go about receiving fee for our services is a direct deposit. But instead of you having to go to an ATM to actually process it, what they do is just deposit it into the checking account on file that you use to make your payment and then once that clears your checking account then we would draft that as fee for services. Ok, well, um, none of those options Sam's club has available. So what was done, um there was an application submitted, and I'm not sure if the bank might have given you a call in regards to a.....did you receive a call from Bank of America?

Callier: "What do you mean an application? An application was submitted for what?"

Wilson: "Ok, there was an application submitted for us to pay off that Sam's Club card as well as receive as, um, credit enough to receive our one-time enrollment fee and then what would happen is that new card and the Citi card would go into the program, and you would keep that Sam's Club card paid off for you to be able to use for emergencies."

Callier: "I'm confused. When you say an application was submitted. What do you mean? You mean like an application for a new credit card? Is that what you're saying?"

Wilson: "That is an application for a new zero percent. Yes, sir. It is an application for a new zero percent credit card. It will pay off your Sam's Club."

Callier: "You submitted an application for a credit card in my name?"

Wilson: "Correct. To secure enrollment as well as pay that Sam's Card."

Callier: "I never gave you permission to do that. I didn't give anybody permission to do that."

Wilson: "Well, yes sir. What happened...ok, yes, I do understand that sir. I had tried to call. I left a message with you last Wednesday, which was the 26th to try and, this was after you had signed the documents from the notary that was sent out."

Callier: "I hadn't signed. The notary didn't even get come out until Friday so why were you doing this on Wednesday before the notary had even come out?

Wilson: "Because, um, they did a quality assurance call with you then setup for the notary to come out and"

Callier: "The notary came out on a Friday, and I hadn't signed anything and two days before you guys are trying to charge me. Why were you...a) I never gave you permission to apply for anything in my name and b) you're doing this stuff before you even sent a notary out. You don't see how that's an issue?"

9

48. Plaintiff informed the Morality representative he was not interested in the program and informed the representative he was not to apply for any credit in Plaintiff's name and to not call Plaintiff anymore. Plaintiff then hung up the phone.

49. Plaintiff then immediately received a call back from "Alex." "Alex" is a telemarketer with a thick "Indian" accent who had called Plaintiff immediately after Plaintiff told them to stop calling.

50. "Alex" also called Plaintiff multiple times in the following days. On or about September 2, 2021, "Alex" called Plaintiff inquiring why Plaintiff was no longer interested in the program. Plaintiff immediately informed "Alex" he had requested not to be called and was not interested in the program. "Alex" responded by telling Plaintiff that he did not understand and that the Defendants needed to be paid.

51. Plaintiff hung up the phone and "Alex" immediately called back and informed Plaintiff they had already begun the program and needed Plaintiff to open up a credit card for the Defendants to charge the card so they could be paid.

52. Defendants victimized Plaintiff via identity theft, stole his identity, and deprived him of his property.

53. On September 3, 2021, Plaintiff received another phone call from "Alex." Plaintiff answered the phone and "Alex" said "Do you remember we were going to help you get a program on your credit cards?" Plaintiff responded "yes." "Alex" then responded, "Sir, fuck you." "Alex" told Plaintiff "Fuck you" multiple times before disconnecting the call.

54. Defendants have approved and adopted a clandestine robocalling operation in which the Defendants do not ever reveal their true identity until the contract is given at the end of the process so they may charge thousands of dollars to credit cards.

55. Plaintiff never knew who was behind the robocalls until the notary delivered the contract for Plaintiff to sign. This necessitated the need for Plaintiff to pretend interest in the program in order to find out who was attempting to defraud consumers on a mass scale.

56. Defendants have authorized the robocalling with prerecorded voice messages from "Kate from Discover" to be placed to millions of American consumers.

57. Defendants and their agents and co-conspirators amassed lists of thousands of potential customers from public records, and data aggregators and then placed phone calls using auto dialing technology *en masse* to market their products.

58. Defendants have knowledge of and have adopted and maintained TCPA violations as a sales strategy. Defendants know full well offshore telemarketers are robocalling and harassing consumers in an attempt to procure business on behalf of the Defendants. Defendants willfully accept these referrals and compensate the telemarketers for their illegal calls.

59. Defendants refuse to take any action to stop or curtail the unlawful sales practices and robo calling because these practices benefit Defendants.

60. Defendants knew the calls were being directed into the Western District of Texas and the Defendants knew these actions could cause the Defendants to be summoned into court as a result of those actions.

61. Plaintiff never consented to receive the calls and texts alleged herein. Plaintiff had no relationship with Defendants prior to the calls alleged herein.

62. Defendants individually, and collectively, have engaged in wire fraud in violation of 18 U.S.C. § 1343. Defendants used interstate telephone lines and computers to access Plaintiff's credit card accounts and apply for cards in Plaintiff's name without permission in an attempt to gain thousands of unearned dollars in fees.

63. Defendants' fraud attempts resulted Plaintiff's Sam's Club credit card account being closed and caused Plaintiff actual damages.

64. Defendants made the following calls to Plaintiff:

| GUARDIAN LEGAL ET AL CALL LOG | | |
|---|---|---|
| Phone number | Date | Time of Call |
| 561-303-0237 | 6/23/2021 | 11:57 AM |
| 561-303-0237 | 6/23/2021 | 11:55 AM |
| 561-303-0237 | 6/29/2021 | 1:50 PM |
| 859-879-6176 | 7/2/2021 | 12:50 PM |
| 800-267-4505 | 7/2/2021 | 1:16 PM |
| 800-267-4505 | 7/2/2021 | 1:16 PM |
| 800-267-4505 | 7/2/2021 | 1:08 PM |
| 800-267-4505 | 7/8/2021 | 1:18 PM |
| 561-303-0237 | 7/14/2021 | 2:27 PM |
| 561-303-0237 | 7/14/2021 | 2:27 PM |
| 800-347-2683 | 7/14/2021 | 2:49 PM |
| 800-347-2683 | 7/14/2021 | 2:14 PM |
| 561-303-0237 | 7/19/2021 | 11:58 AM |
| 561-303-0237 | 7/22/2021 | 11:08 PM |
| 561-303-0237 | 7/22/2021 | 9:41 AM |
| 561-303-0237 | 7/23/2021 | 12:47 PM |
| 904-712-3282 | 8/24/2021 | 4:10 PM |
| 800-267-4505 | 8/24/2021 | 3:34 PM |
| 561-303-0237 | 8/24/2021 | 3:06 PM |
| 904-712-3282 | 8/24/2021 | 4:10 PM |
| 904-712-3282 | 8/25/2021 | 11:29 AM |
| 915-381-1240 | 8/25/2021 | 3:35 PM |
| 720-386-2684 | 8/25/2021 | 4:00 PM |
| 720-386-2684 | 8/26/2021 | 10:06 AM |
| 720-386-2684 | 8/26/2021 | 10:07 AM |
| 720-386-2684 | 8/27/2021 | 12:36 PM |
| 720-386-2684 | 8/27/2021 | 12:36 PM |
| 720-386-2684 | 8/27/2021 | 1:07 PM |
| 720-386-2684 | 8/27/2021 | 3:02 PM |
| 844-677-4487 | 8/30/2021 | 2:00 PM |
| 800-347-2683 | 8/31/2021 | 1:58 PM |
| 800-347-2683 | 8/31/2021 | 1:57 PM |
| 800-347-2683 | 8/31/2021 | 11:07 AM |
| 561-303-0237 | 9/1/2021 | 3:40 PM |
| 561-303-0237 | 9/1/2021 | 12:24 PM |
| 800-347-2683 | 9/1/2021 | 3:59 PM |
| 800-347-2683 | 9/1/2021 | 3:47 PM |
| 561-303-0237 | 9/2/2021 | 2:51 PM |
| 561-303-0237 | 9/2/2021 | 2:45 PM |
| 800-347-2683 | 9/2/2023 | 2:15 PM |
| 646-491-9596 | 9/3/2021 | 11:53 AM |

### The Texas Business and Commerce Code 305.053

65. The Texas Business and Commerce code has an analogous portion that is related to the TCPA and was violated in this case.

66. The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

### The Texas Business and Commerce Code 302.101

67. The Texas Business and Commerce Code requires sellers to obtain a registration certificate from the Office of the Secretary of State in order to make telephone solicitations from Texas or to consumers located in Texas.

68. Plaintiff may seek damages under Texas law for violations of § 302.101 of up to $5000 per violation, reasonable costs of prosecuting the action, court costs, investigation costs, deposition costs, witness fees, and attorney's fees.

### INJURY, HARM, DAMAGES, and ACTUAL DAMAGES
### AS A RESULT OF THE CALLS

69. Defendants' calls harmed the Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

70. Defendants' calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

71. Defendants' calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone line.

72. Defendants' calls harmed the Plaintiff by intruding upon Plaintiff's seclusion.

73. The Plaintiff has been harmed, injured, and damages by the calls including, but not limited to:
- Reduced Device Storage space

- Reduced data plan usage

- Invasion of privacy

- Identity theft

- Decreased cell phone battery life

- More frequent charging of my cell phone resulting in reduced enjoyment and usage of my cell phone

- Reduced battery usage

- Annoyance

- Frustration

- Anger

### The Plaintiff's cell phone is a residential number

74. The calls were to the Plaintiff's cellular phone 915-245-4374, which is the Plaintiff's personal cell phone that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 10 years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

### **FIRST CAUSE OF ACTION**

Willful and/or Knowing Violation of 47 U.S.C. § 227
Telephone Consumer Protection Act of 1991
(Against all Defendants)

75. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

76. Defendants and/or their agents placed calls to Plaintiff's cellular telephone.

77. Plaintiff never consented to receive calls from Defendants. Plaintiff has no relationship with Defendants.

78. Defendants' calls were made for purposes of advertising and marketing Defendants' credit card debt relief services. These calls constituted commercial advertising and telemarketing as contemplated by the TCPA.

79. The calls were made using an auto dialing technology to the cellular phone of Plaintiff in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and (B).

80. As a result of their unlawful conduct, Defendants repeatedly invade the personal privacy of consumers like Plaintiff, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling Plaintiff to recover $500 in statutory damages for each violation and an injunction requiring Defendants to stop their unlawful texting campaigns.

81. Not only did Defendants make these violating calls, Defendants and/or their agents did so "knowingly" and/or "willfully' under 47 U.S.C. § 227 (b)(3)(C).

82. If the Court finds that Defendants willfully or knowingly violated this subsection, the Court may exercise its discretion to increase the amount of the award from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

### SECOND CAUSE OF ACTION
**Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)**
**(Against All Defendants)**

83. Plaintiff incorporates the forgoing allegations as if fully set forth herein.

84. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

a. written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1) [2];

   b. training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2) [3]; and,

   c. in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the text is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

85. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

86. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

## THIRD CAUSE OF ACTION
### Violations of The Texas Business and Commerce Code 305.053

87. Plaintiff incorporates the foregoing allegations as if set forth herein.

88. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing robocalls to Mr. Callier's cellular telephone number without his prior express written consent in violation of 47 USC 227 et seq. The Defendant violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an automated dialing system that does not comply with the technical and procedural standards under this subsection.

89. Plaintiff is entitled to an award of at least $500 in damages for each such violation. **Texas Business and Commerce Code 305.053(b)**

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 (codifying a June 26, 2003 FCC order).

90. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053(c).**

### THIRD CAUSE OF ACTION
### Violations of The Texas Business and Commerce Code 302.101

91. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

92. §302.101 of the Texas Business & Commerce Code prohibits sells from engaging in telephone solicitation from a location in this state or to a purchaser located in this state unless the seller obtains a registration certificate from the Office of the Secretary of State for the business location from which the solicitation is made.

93. Defendant violated § 302.101 of the Texas Business & Commerce Code when its representatives engaged in continuous and repetitive telephone solicitation of Plaintiff without a registration certificate from the Office of the Secretary of State.

94. 302.302(a) of the Texas Business & Commerce Code provides that a person who violates this chapter is subject to a civil penalty of no more than $5000 for each violation. Furthermore, §302.302(d) provides that the party bringing the action is also entitled to recover all reasonable costs of prosecuting the action, including court costs, investigative costs, deposition expenses, witness fees and attorney fees.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brandon Callier prays for judgment against the Defendant jointly and severally as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendant violates the TCPA and Texas state law;

C. An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D. An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation and individual for 41 calls.

E. An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F. An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101.

G. An award to Mr. Callier of damages, as allowed by law under the TCPA;

H. An award to Mr. Callier of interest, costs and attorneys' fees, as allowed by law and equity

I. Such further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

September 7, 2021,                    Respectfully Submitted,

Brandon Callier
Plaintiff, Pro Se
6336 Franklin Trail Drive
El Paso, Texas 79912
915-383-4604
Callier74@gmail.com